MICHAEL OMEGA HARDY *v.* STATE OF INDIANA.

[No. 2-575A127. Filed September 13, 1976.]

*Paul V. Rumple,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

SULLIVAN, J.—Hardy was convicted of rape and sodomy. He appeals upon the following assertions of error:

(1) The court erred in overruling his Motion to Dismiss the Charges, which Motion alleged denial of his right to speedy trial.

(2) The court erred in failing to suppress testimony of the prosecuting witness which identified Hardy as the perpetrator of the offenses. Hardy also asserts that this testimony was insufficient to establish that he was the offender.

(3) The evidence was insufficient to establish that the prosecuting witness had been raped and sodomized.

(4) The court erred in ordering him confined to Norman Beatty Hospital.

## I.

## DENIAL, IF ANY, OF RIGHT TO SPEEDY TRIAL WAS WAIVED

During pendency of these charges, Hardy was incarcerated in California. He had previously escaped from Norman Beatty Hospital where he had been confined as a result of earlier unrelated sexual charges. His request for speedy trial upon these charges was made by letter dated June 29, 1973 from his California attorney addressed to the Marion County Prosecutor. Indiana authorities did not take custody of Hardy for purposes of prosecution until June 5, 1974. On August 15, 1974 a pre-trial conference was conducted by the Hamitlon Superior Court, to which the case had been venued. At that pre-trial conference the court set the trial for December 2, 1974. It was not until November 22, 1974 that Hardy moved for dismissal of the charges alleging that his right to speedy trial had been denied and that Indiana Rules of Criminal Procedure, CR. 4 (B) required his discharge.

We need not decide whether Hardy's failure to make request for speedy trial to the Court, as well as to the prosecutor, renders the holding of *Hart* v. *State* (1973), 260 Ind. 137, 292 N.E.2d 814 inapplicable. Even if the request made solely to the Marion County Prosecutor was sufficient to bring CR. 4 (B) into operation, Hardy fails in his assertion that reversal of his conviction is required.

Hardy's motion to dismiss the charges, not having been made until more than three months following the time that the court fixed the date for trial, came too late. *Utterback* v. *State* (1974), 261 Ind. 685, 310 N.E.2d 552; *Bryant* v. *State* (1973), 261 Ind. 172, 301 N.E. 2d 179.

## II.

### COURT PROPERLY OVERRULED MOTION TO SUPPRESS IDENTIFICATION TESTIMONY. SUCH TESTIMONY WAS SUFFICIENTLY POSITIVE TO WARRANT CONVICTION

Hardy argues that of 38 photographs displayed to the victim by police shortly after the offense, most were of men substantially older than he and that the other pictures depicted persons who differed from Hardy in appearance as to height and weight. These discrepancies do not compel us to find that the photographic line-up was unduly suggestive. The fact remains that from the 38 photographs, the victim identified a photograph of Hardy as that of her assailant. Even were it otherwise, there was ample independent factual basis for her positive identification of Hardy. *Tewell* v. *State* (1976), 264 Ind. 88, 339 N.E.2d 792.

Hardy complains of a live line-up approximately four years after the crime and asserts that such line-up unfairly reinforced a mental image held by the prosecuting witness as drawn from the photographic identification made long before. He asserts that at the time of the live line-up she first identified someone else as her attacker and only after a time interval during which the persons in the line-up were rearranged did she identify Hardy.

This argument concerning the live line-up is no more availing to Hardy than the argument made with respect to the photographic line-up earlier held. The fact remains that notwithstanding Hardy's protestations to the contrary, the victim's in-court identification was sufficiently supported by fact so as to permit the trial court sitting without jury, to have reasonably concluded that Hardy was the attacker.

Whether identification testimony is equivocal or certain goes to the weight and probative effect to be given that evi-

dence. It does not bear upon admissibility. Hence, it was not error for the court to overrule Hardy's Motion to Suppress the identification testimony of the prosecuting witness.

The victim testified that when first awakened in the bedroom of her residence, she thought the man at the foot of the bed was her husband returning from a business engagement, but that when she sat up, she had a full face view of the intruder from approximately 3-4 feet, aided by a hall light which illuminated his left profile. She testified further that after the sexually violative acts took place, she could see her assailant as he walked down the hall.

He returned to her bedroom twice thereafter. By the hallway light she could see him as he searched the dresser drawers in the bedroom and that when he opened the closet door the closet light was automatically illuminated and that she had a lighted profile view of him. When she pointed Hardy out during trial she stated she had no doubt that he was the same man she saw in her bedroom the night of the attack.

This evidence was sufficient to establish that Hardy was indeed the attacker.

### III.

### EVIDENCE WAS SUFFICIENT TO ESTABLISH COMMISSION OF RAPE AND SODOMY

Hardy contends that there was insufficient evidence to establish that rape and sodomy, i.e., anal intercourse, had been committed. He relies upon the victim's testimony that after having pulled her to the side of the bed, he stood at the side of the bed and committed the acts while she was lying upon the bed with her legs "half over the bed" or "up". He contends that neither of the sex acts charged were possible of performance with the participants in such positions.

The prosecuting witness testified categorically and with certainty that penetration had been achieved anally as well as

vaginally. Additionally, the record discloses that when she was examined at the hospital immediately following the occurrence, a sperm test proved positive. This evidence was sufficient to support the conclusion that the acts did, in fact, take place.

## IV.

### TRIAL COURT'S "TRANSFER" OF DEFENDANT TO NORMAN BEATTY HOSPITAL FOLLOWING CONVICTION AND SENTENCING IS NOT CAUSE FOR REVERSAL

Hardy asserts that after trial and sentencing, the trial court erroneously ordered him recommitted to Norman Beatty Hospital where he had been confined as a criminal sexual psychopath pursuant to a previous determination in Marion Criminal Court in an unrelated criminal proceeding. Hardy contends that such "transfer" was made without notice and hearing and that it precluded him from obtaining his liberty pending appeal by filing an appeal bond.

We perceive no merit to such argument insofar as it bears upon the conviction upon appeal. At most, it bears upon whether the time served in Norman Beatty Hospital subsequent to February 7, 1975, the date Hardy was sentenced upon the convictions here involved, is to be credited against those concurrent sentences. The situs of his confinement does not bear upon the validity of the convictions underlying that confinement.

The judgment below is affirmed.

White, J. and Garrard, J., sitting by designation, concur.

NOTE.—Reported at 354 N.E.2d 342.